No. 2019-2134

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

LARRY GOLDEN,

Plaintiff-Appellant

v.

UNITED STATES,

Defendant-Appellee

On Appeal from the United States Court of Federal Claims in
Case No. 1:19-104, Senior Judge Eric G. Bruggink

---

## BRIEF FOR APPELLEE

---

JOSEPH H. HUNT
*Assistant Attorney General*

GARY L. HAUSKEN
*Director*

NICHOLAS J. KIM
*Trial Attorney*
*Commercial Litigation Branch*
*Civil Division*
*Department of Justice*
*Washington, DC 20530*
*T: (202) 616-8116*

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ............................................. 1

STATEMENT OF JURISDICTION ................................................ 1

STATEMENT OF THE ISSUES ................................................... 2

STATEMENT OF THE CASE ..................................................... 3

    A.    Statutory Background ................................................. 3

        1)    Displacement of Tucker Act Remedies By A Statutory Scheme ................................................. 4

        2)    Government Patent Infringement Under 28 U.S.C. § 1498 ............................................ 5

    B.    Legal Background ...................................................... 8

        1)    Dismissal of Duplicate Claims ............................. 8

        2)    Dismissal for Lack of Jurisdiction ....................... 8

        3)    Dismissal for Failure to State a Claim ................ 9

        4)    Pro Se Plaintiffs Are Not Excused From Pleading Failures .................................................. 10

    C.    Factual & Procedural Background ............................. 10

        1)    Mr. Golden's Lead Case (Case No. 13-307), His Premature Appeal (Appeal No. 18-1942), and Petition for Writ of Mandamus (Appeal No. 19-100) ......................................................... 11

        2)    Inter Partes Review of Mr. Golden's U.S. Patent RE43,990 (IPR2014-00714) ................................. 16

        3)    Mr. Golden's New Duplicative and Derivative Complaint, CFC No. 19-104 ............................... 21

        4)    Dismissal of Mr. Golden's New Case ................. 26

SUMMARY OF ARGUMENT ...................................................... 29

STANDARDS OF REVIEW ......................................................... 32

ARGUMENT ............................................................................ 33

I.    **Mr. Golden's Duplicative Patent Infringement "Takings" ClaimS Were Properly Dismissed. ............... 33**

    A.    The Court of Federal Claims Did Not Abuse Its Discretion In Dismissing Mr. Golden's Duplicative Takings Claim ............................................................. 33

        1)    Mr. Golden Has Never Disputed That His "Takings" Claims Are Duplicative....................... 33

        2)    The Patent Infringement "Takings" Claims In The New Case Duplicate Those In The Lead Case...................................................................... 33

    B.    Even If Labeled As A "Taking," The Tucker Act Does Not Provide Jurisdiction Over Patent Infringement Allegations. ................................................................. 36

II.   **Mr. Golden's Takings Claim Based on the Cancellation of His Claims In *Inter Partes* Review Was Properly Dismissed .............................................................. 40**

    A.    The Tucker Act Does Not Provide Jurisdiction Over A Takings Claim Directed At Cancellation of Patent Claims In *Inter Partes* Review ..................................... 40

        1)    There Is No "Procedural Impediment" to a Patent Owner Raising Objections Based On the Takings Clause During Inter Partes Review. ................... 43

        2)    The Judicial Review Scheme Squarely Covers Mr. Golden's Grievance............................................... 44

        3)    The AIA's Administrative and Judicial Review Would Still Be Adequate to Withdraw Tucker Act Jurisdiction.......................................................... 46

    B.    Mr. Golden's Takings Allegations Relating to Cancellation of Claims In *Inter Partes* Review Are Entirely Foreclosed By This Court's Decision in *Celgene*. ....................................................................... 49

    C.    Mr. Golden's Deliberate Abandonment of Claims In *Inter Partes* Review Cannot Constitute a Fifth Amendment Taking. ..................................................... 51

**III.   Decisions By The Court of Federal Claims And This Court Are Not Fifth Amendment Takings ................... 55**

    A.    The Tucker Act's Takings Jurisdiction Does Not Include Allegations Amounting to Disagreement With Court Decisions. ............................................. 55

    B.    The New Complaint Fails To State A Plausible Claim Of A Taking Based On Court Decisions. ..................... 56

**IV.   Recent Legal Filings By Mr. Golden Materially Undermine His Takings Arguments To This Court. .. 58**

**V.    Reservation of Rights & Appendix Issues ................... 60**

CONCLUSION .................................................................. 62

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Air Pegasus of D.C., Inc. v. United States,*
424 F.3d 1206 (Fed. Cir. 2005) .................................................. 3

*Alpine PCS, Inc. v. United States,*
878 F.3d 1086 (Fed. Cir. 2018) .............. 41-42, 42, 43, 44, 45, 48

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
935 F.3d 1319 (Fed. Cir. 2019) ......................................... 45, 46

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................ 9

*AstraZeneca Pharms. LP v. Apotex Corp.,*
669 F.3d 1370 (Fed. Cir. 2012) ............................................... 8-9

*ATI Techs. ULC v. Iancu,*
920 F.3d 1362 (Fed. Cir. 2019) ............................................... 45

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................... 9

*Bell v. Hood,*
327 U.S. 678 (1946) ......................................................... 9, 39

*Brandt v. United States,*
710 F.3d 1369 (Fed. Cir. 2013) .............................................. 32

*Cane Tenn., Inc. v. United States,* Z
57 Fed. Cl. 115 (2003) ............................................... 57

*Celgene Corp. v. Peter,*
931 F.3d 1342 (Fed. Cir. 2019) ................... 30, 44, 45, 46, 49, 50

*Christy, Inc. v. United States,*
141 Fed. Cl. 641 (2019) ............................................... 3

**<u>Cases</u>**

*Collabo Innovations, Inc. v. Sony Corp.*,
    No. 2018-1311, 2019 WL 3545450 (Fed. Cir. Aug. 5, 2019) .... 46

*Collins v. United States*,
    67 F.3d 284 (Fed. Cir. 1995) .................................................... 56

*Crocker v. United States*,
    125 F.3d 1475 (Fed. Cir. 1997) ................................................ 53

*Crozier v. Fried. Krupp AG.*,
    224 U.S. 290 (1912) ........................................................... 6, 38

*Dimare Fresh, Inc. v.
United States*, 808 F.3d 1301 (Fed. Cir. 2015) ....................... 10

Enzo Life Scis., Inc. *v.* Becton, Dickinson & Co., No. 2018-1232,
2019 WL 3851578 (Fed. Cir. Aug. 16, 2019) ............................... 46

*Finch v. Hughes Aircraft Co.*,
    926 F.2d 1574 (Fed. Cir. 1991) ................................................ 32

*Forest Glen Props., L.L.C. v. United States*,
    79 Fed. Cl. 669 (2007) ............................................................. 8

*Haines v. Kerner*,
    404 U.S. 519 (1972) ................................................................ 10

*Hardy v. United States*,
    138 Fed. Cl. 344 (2018) .......................................................... 57

*Henke v. United States*,
    60 F.3d 795 (Fed. Cir. 1995) .................................................... 10

*Horne v. Dep't of Agric.*,
    569 U.S. 513 (2013) ...................................... 4, 41, 42, 46, 47, 48

*Huawei Device Co. v. Optis Wireless Tech., LLC*,
    No. IPR 2018-00585, 2019 WL 4439874 ................................. 43

**<u>Cases</u>**

*Keehn v. United States,*
110 Fed. Cl. 306 (2013) ............................................................ 7

*Lamson v. United States,*
101 Fed. Cl. 280 (2011) ............................................................ 7

*Marcum LLP v. United States,*
753 F.3d 1380 (Fed. Cir. 2014) ............................................. 48

*McNutt v. Gen. Motors Acceptance Corp.,*
298 U.S. 178 (1936) ............................................................... 10

*Oliney v. Gardner,*
771 F.2d 856 (5th Cir. 1985) .................................................. 8

*Return Mail, Inc. v. U.S. Postal Serv.,*
139 S. Ct. 1853 (2019) ............................................................ 54

*Reynolds v. Army & Air Force Exch. Serv.,*
846 F.2d 746 (Fed. Cir. 1988) ............................................... 10

*Schillinger v. United States,*
155 U.S. 163 (1894) ........................................................ 5, 6, 37

*Shearin v. United States,*
992 F.2d 1195 (Fed. Cir. 1993) ............................................. 48

*Skip Kirchdorfer, Inc. v. United States,*
6 F.3d 1573 (Fed. Cir. 1993) .................................................. 3

*St. Bernard Par. Gov't v. United States,*
916 F.3d 987 (Fed. Cir. 2019) ......................................... 4, 40

*St. Vincent's Med. Ctr. v. United States,*
32 F.3d 548 (Fed. Cir. 1994) ......................................... 4-5, 47

*Sutcliffe Storage & Warehouse Co. v.*
*United States,* 162 F.2d 849 (1st Cir. 1947) .............................. 8

**Cases**

*Suttles v. Office of Pers. Mgmt.*,
No. 98-3183, 1998 WL 537763 (Fed. Cir. Aug. 10, 1998) .......... 9

*Tex. Peanut Farmers v. United States*,
409 F.3d 1370 (Fed. Cir. 2005) ........................................... 44, 47

*United States v. Bormes*,
568 U.S. 6 (2012) ............................................................... 41, 47

*Two Shields v. United States*,
820 F.3d 1324 (Fed. Cir. 2016) ............................................... 32

*Vereda, Ltda. v. United States*,
271 F.3d 1367 (Fed. Cir. 2001) .................................... 47, 49, 55

*Williamson Cty. Re'l Planning Comm'n v. Hamilton Bank*,
473 U.S. 172 (1985) ............................................................... 57

*Zoltek Corp. v. United States*,
672 F.3d 1309 (Fed. Cir. 2012) (en banc) ................................. 12

*Zoltek v. United States*,
442 F.3d 1345 (Fed. Cir. 2006) ...................................... 6-7, 7, 38

**Statutes**

5 U.S.C. § 706, (B) ........................................................... 43
28 U.S.C. § 1491 ...................................................... passim
28 U.S.C. § 1498 ...................................................... passim
35 U.S.C. § 141 ................................................................ 45
35 U.S.C. § 316 ............................................... 17, 18, 43
35 U.S.C. § 316, 35 ....................................................... 43
35 U.S.C. § 316, (10) ..................................................... 43
35 U.S.C. § 318 ................................................................ 20

## Rules

Fed. Cir. R. 32 ................................................................. 1

Fed. Cir. R. 47.5 .............................................................. 1

Fed. R. App. P. 4 ............................................................. 1

Fed. R. App. P. 32 ........................................................... 1

## STATEMENT OF RELATED CASES

Under the circumstances presented here, the Government agrees that no other appeal in or from the present civil action (Court of Federal Claims Case No. 19-104) has previously been before this or any other appellate court.  The Government is not aware of any other related cases within the meaning of Fed. Cir. R. 47.5(b).

## STATEMENT OF JURISDICTION

Mr. Golden's new complaint asserts jurisdiction in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2018). The Court of Federal Claims dismissed Mr. Golden's complaint because it was duplicative of a pending case, because the Court lacked jurisdiction under the Tucker Act to adjudicate patent infringement claims, and because the compliant otherwise failed to state a claim for which relief could be granted. Appx1000–1003. The Court of Federal Claims entered final judgment against Mr. Golden on May 15, 2019. Appx1117. Mr. Golden timely filed a notice of appeal on July 12, 2019. Fed. R. App. P. 4(a)(1)(B); Appx1118.

As explained below, the Court of Federal Claims properly concluded that the new complaint should be dismissed.

# STATEMENT OF THE ISSUES

The questions presented are:

(1)    Whether the Court of Federal Claims abused its discretion in dismissing Mr. Golden's new takings allegations that duplicated the allegations raised in his lead case;

(2)    Whether the Court of Federal Claims has jurisdiction to adjudicate takings claims that allege patent infringement by the Government;

(3)    Whether the Court of Federal Claims has jurisdiction to adjudicate takings claims directed to cancellation of patent claims in *inter partes* review;

(4)    Whether the cancellation of claims in *inter partes* review, especially when they resulting from a patent owner's deliberate abandonment of those claims, fails to state a plausible claim for a compensable taking; and

(5)    Whether the various substantive and procedural decisions by the Court of Federal Claims and this Court in Mr. Golden's lead case fail to give rise to a plausible claim for a compensable taking.

# STATEMENT OF THE CASE

## A.    Statutory Background

The Tucker Act vests the Court of Federal Claims with jurisdiction over claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1). In alleging a violation of the Takings Clause, the plaintiff must show a legally-cognizable property interest. *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1580 (Fed. Cir. 1993). The plaintiff must also show a "governmental action [that] amounted to a compensable taking" of the identified property interest. *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212–13 (Fed. Cir. 2005).

Moreover, the plaintiff must "concede the legitimacy of the government action that effected the taking." *Christy, Inc. v. United States*, 141 Fed. Cl. 641, 657 (2019) (citing *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1329 (Fed. Cir. 2012)). And even then, not all losses generate a Fifth Amendment taking. *Skip Kirchdorfer, Inc.*, 6 F.3d at 1580.

Aside from its constituent elements, the Tucker Act's grant of jurisdiction has been recognized to have additional qualifications and limits. Two relevant jurisdictional limitations are discussed below.

### 1) *Displacement of Tucker Act Remedies By A Statutory Scheme*

As the Supreme Court and this Court have explained, "[t]here is a substantial body of law dealing with the relationship between the Tucker Act and statutes in which Congress has created an administrative remedy followed by judicial review in a district court." *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 994 (Fed. Cir. 2019); *see Horne v. Dep't of Agric.*, 569 U.S. 513, 526–27 (2013). In "such settings, Congress's creation of a system of administrative review, followed by judicial review in a district court (or in a court of appeals) has been held to displace any Tucker Act remedy that may otherwise have been available in the Court of Federal Claims." *St. Bernard Par. Gov't*, 916 F.3d at 994; *see St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 550 (Fed. Cir. 1994) ("Courts have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a precisely

drawn, comprehensive and detailed scheme of review in another forum, as in the present case.").

### 2) *Government Patent Infringement Under* 28 U.S.C. § 1498

The Supreme Court has also recognized that the Tucker Act does not confer jurisdiction over a claim that the Government used a patented invention without authorization, even when that claim is framed as a Fifth Amendment takings claim. *See Schillinger v. United States*, 155 U.S. 163, 168 (1894). In *Schillinger*, the patent owner sued a contractor (Cook) who contracted with the Architect of the Capitol to construct a concrete pavement. *Id.* at 164. The patent owner alleged that Cook used its patented method to build the pavement without first acquiring the right to do so. *Id.* . As such, the Supreme Court understood the patent owner to allege "wrongful appropriation by the government" of its patented method. *Id.* at 169.

The Supreme Court began with the principle that "[t]he United States cannot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the

liability of the Government is submitted to the courts for judicial determination." *Id.* at 166. Applying this principle of strict construction, the Court recognized that the Tucker Act's waiver of sovereign immunity did not extend to cases "sounding in tort." *Id.* at 167 (quoting an 1887 version of the Tucker Act); *id.* at 169 ("[C]ases sounding in tort are not cognizable in the Court of Claims"). The Court recognized "[t]hat this action is one sounding in tort is clear" and that "[t]he transaction as stated in the petition . . . was a tort pure and simple." *Id.* at 169. Consequently, the *Schillinger* Court held that patent infringement claims fall outside of the Tucker Act because they sound in tort. *Schillinger*, 155 U.S. at 168–69.

In response to *Schillinger* and similar cases, Congress enacted the Act of 1910, the predecessor to Section 1498, which "add[ed] to the right to sue the United States in the Court of Claims" even without the presence of a contract. *See Crozier v. Fried. Krupp AG.*, 224 U.S. 290, 304 (1912); *see also Zoltek v. United States*, 442 F.3d 1345, 1350–53 (Fed. Cir. 2006), *vacated on other grounds*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc) (finding

that the Supreme Court "acknowledged Congressional recognition that the Court of Claims lacked Tucker Act jurisdiction over infringement under a takings theory"). The legislative history of the Act of 1910 confirms that the statute "augmented" the Court of Claims' Tucker Act jurisdiction. *Zoltek*, 442 F.3d at 1351 (citing H.R. Rep. No. 61-1288 at 3 (1910)).

It is, thus, settled law that the Tucker Act does not provide jurisdiction over claims of government patent infringement. For such allegations, jurisdiction is separately and solely provided to the Court of Federal Claims by Section 1498(a). *See, e.g., K*e*ehn v. United States,* 110 Fed. Cl. 306, 335 (2013) ("It is 28 U.S.C. § 1498(a), not the Fifth Amendment to the United States Constitution, that provides the waiver of sovereign immunity that enables a plaintiff to file suit against the government for patent infringement."); *Lamson v. United States*, 101 Fed. Cl. 280, 284–85 (2011) (discussing Schillinger and Zoltek in dismissing for lack of jurisdiction a Fifth Amendment takings claim in connection with the alleged use of the plaintiff's patent by federal "grantees").

### B. Legal Background

#### 1) Dismissal of Duplicate Claims

"When a plaintiff files a second complaint alleging the same cause of action as a prior, pending, related action, the second complaint may be dismissed." *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985) (citing *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977)). This discretion exists because "[t]here is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket." *See Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849, 851 (1st Cir. 1947) (quoting Moore's Federal Practice and citing *United States v. The Haytian Republic*, 154 U.S. 118 (1894)).

#### 2) Dismissal for Lack of Jurisdiction

When ruling on a motion to dismiss for lack of subject matter jurisdiction, a court ordinarily accepts as true all of the non-movant's factual allegations. *Forest Glen Props., L.L.C. v. United States*, 79 Fed. Cl. 669, 676 (2007).

But jurisdiction is not supported by allegations that are frivolous or merely conclusory. *Id.* at 676 n.17; *AstraZeneca Pharms. LP v. Apotex Corp.*, 669 F.3d 1370, 1376 (Fed. Cir. 2012)

– 8 –

("accepting as true" only "non-conclusory allegations of fact");
*Suttles v. Office of Pers. Mgmt.*, No. 98-3183, 1998 WL 537763, at
*1 (Fed. Cir. Aug. 10, 1998) (requiring non-frivolous, non-
conclusory allegations of specified fact); *see also Bell v. Hood*, 327
U.S. 678, 682–83 (1946) (directing courts to exercise their
jurisdiction to adjudicate cases except (1) where the alleged claim
under the Constitution or federal statute clearly appears
immaterial and made solely for the purpose of obtaining
jurisdiction; or (2) where such a claim is wholly insubstantial and
frivolous).

### 3)    *Dismissal for Failure to State a Claim*

Under RCFC 12(b)(6), although well-pled factual allegations
are accepted as true, the factual allegations in the complaint must
be enough to raise a right to relief above the speculative level, and
they need to state a claim of relief that is plausible on its face.
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  This
"requires more than labels and conclusions."  *Id.* at 555, 570; *see
also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the assumption of
truth does not apply to legal conclusions).

In deciding a motion to dismiss under RCFC 12(b)(6), a court may look to "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *See Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, Fede*ral Practice and Procedure § 13*57 (3d ed. 2004)).

### 4) *Pro Se Plaintiffs Are Not Excused From Pleading Failures*

*Pro se* plaintiffs' pleadings are held to a less stringent standard than pleadings drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, while a court may excuse ambiguities in a *pro se* plaintiff's complaint, a court "does not excuse [its] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). Additionally, a *pro se* plaintiff must still allege facts essential to show jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv., 84*6 F.2d 746, 748 (Fed. Cir. 1988).

## C.     Factual & Procedural Background

The Court of Federal Claims' opinion provides a clear and succinct digest of the recent procedural history. Appx1000–1002.

Given the breadth and complexity of Mr. Golden's allegations in the new case, which are either entirely duplicative or merely derivative of events in or related to his lead case, the Government attempts to summarize the events implicated in Mr. Golden's new case and the instant appeal.

> **1)** **Mr. Golden's Lead Case (Case No. 13-307), His Premature Appeal (Appeal No. 18-1942), and Petition for Writ of Mandamus (Appeal No. 19-100).**

Proceeding *pro se*, Mr. Golden filed his original complaint in 2013, alleging infringement of a single patent, U.S. Pat. No. RE43,990 (the '990 Patent) and did not allege a violation of the Takings Clause.[1]  Appx1205–1215.  On August 15, 2013, Mr. Golden filed a "Notice of Supplement," which added additional allegations of infringement of U.S. Pat. No. RE43,990, which the Court of Federal Claims understood to be an amended complaint.

---

[1]  As represented by Mr. Golden, before this original filing, the Clerk's Office for the Court of Federal Claims advised Mr. Golden that "the CFC don't have a category for filing a Government 'Takings' of intellectual property subject matter."  PBr. at 3. Taken as true, since commencement of his lead case, Mr. Golden has had reason to know that pursuit of patent infringement allegations under the guise of violation of the Takings Clause is legally dubious.

Appx1511–1516; Appx1743.  After the Government moved for a more definite statement, the Court of Federal Claims subsequently ordered Mr. Golden to file a second amended complaint.  Appx1734; Appx1744.

Mr. Golden's second amended complaint added allegations of infringement of six additional patents and further alleged that the Government had "taken the subject matter, scope, technology rationale, devices schematics, process, methods, procedures and systems of what is now Golden's patents . . . for public use without just compensation."  Appx1791–1793.  The Second Amended Complaint alleged jurisdiction over his takings claims under 28 U.S.C. § 1491(a).  *Id.*

On May 31, 2014, upon recognizing that the claims appeared duplicative, the Court of Federal Claims stayed Mr. Golden's takings claims pending determination of liability for the Government's alleged patent infringement.  Appx1794 (citing *Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc)); *see also* Appx1795 (maintaining stay of takings claims).  As Mr. Golden continued to add additional patent infringement

allegations to this case, he also alleged a taking of the subject matter of his patents. *See* Appx1843 ("COUNT II / Taking of subject matter described in and covered by [Plaintiff's patents] under 28 U.S.C. § 1491").

At this point, the Government first moved to dismiss certain devices from Mr. Golden's then-operative amended complaint. Appx1846. This motion was denied because the Court of Federal Claims found that Mr. Golden had stated sufficient facts to survive a motion to dismiss. Appx1869. The Court of Federal Claims then ordered the Government to provide jurisdictional discovery relating to the devices that were the subject of the denied motion to dismiss. Appx1870–1871.

In the interim, responding to Mr. Golden's persistent attempts to further supplement his complaint (*see*, *e.g.*, Appx1872–1873, Appx1978–1979), the Court permitted Plaintiff to amend his complaint "one final time." Appx2039; Appx2032 at 15:19–21 ("You will then file a new complaint and we're going to label it fifth and final complaint, so there's no ambiguity about this. It's going to be the last one."). The Court intended this

document to contain "all of [Plaintiff's] concerns, all of your charges against the Government in one document." Appx2031.

Mr. Golden's final amended complaint in the lead case Appx2040–2218 (herein "the lead complaint") was filed on August 10, 2017. Spanning 178 pages, the lead complaint is needlessly prolix and very difficult to comprehend. As relevant for this appeal, the takings claims of Mr. Golden's lead complaint include a generic "Count I" (Appx2064–2067 at ¶¶87–88) and dozens of separate takings allegations, each labelled as "Count I" and naming a particular project. Other than naming different products and parties, each separate takings allegation is nearly identical in content and form to the generic takings count.[2]

---

[2] *Compare* Appx2040 *et seq.* (lead complaint) at ¶¶87–88 *with* ¶¶93–95, 98–100, 103–105, 108–110, 113–115, 118–120, 123–125, 128–130, 133–135, 138–140, 143–145, 148–150, 153–155, 158–160, 168–170, 173–175, 181–183, 186–188, 191–193, 196–198, 201–203, 206–208, 211–213, 216–218, 221–223, 227–229, 232–234, 237–239, 242–244, 247–249, 252–254, 257–259, 262–264, 267–269, 272–274, 277–279, 282–284, 287–289, 292–294, 297–299, 302–304, 307–309, 312–314, 317–319, 322–324, 327–329, 332–334, 337–339, 342–344, 347–349, 352–354, 357–359, 362–364, 367–369, 372–374, 377–379, 382–384, 387–389, 392–394, 397–399, and 402–404.

In addition to takings allegations, the Final Complaint also contains parallel generic and separate claims of patent infringement under 28 U.S.C. § 1498(a), all labelled as "Count II." *See* Appx2067–2069 at ¶¶91–92 (generic Count II); *see also* Appx2329–2332 (summarizing the dozens of separate allegations of patent infringement under Section 1498).

The Government moved for partial dismissal of the lead complaint, focusing on various patent infringement allegations and corresponding takings allegations. Appx2219–2221. The Court of Federal Claims granted the Government's motion as to the patent infringement allegations, but denied without prejudice the Government's attempt to dismiss the takings allegations because they were stayed. Appx2262 ("Partial Dismissal Order"); Appx2278 at 17, n.14.

Mr. Golden attempted to appeal the Partial Dismissal Order, Appx2301, and after ordering Mr. Golden to show cause why the appeal should not be dismissed as premature, this Court dismissed the appeal. Appx1180; Appx1182–1185. Unsatisfied, Mr. Golden then petitioned this Court for a writ of mandamus,

demanding that this Court either adjudicate his takings claims or direct the Court of Federal Claims to decide them. Appx1125. This Court denied Mr. Golden's petition and Mr. Golden's subsequent motion for reconsideration. Appx1179 (finding that "any delay in reaching a final decision in this case is in no small way attributable to Mr. Golden's own strategy of adding claims every time he believes the government has prolonged this case.").

Around the same time, on November 9, 2018, the Court of Federal Claims lifted the stay on Mr. Golden's takings claims and permitted the Government to move to dismiss them. Appx2303–2305.

### 2) *Inter Partes Review of Mr. Golden's U.S. Patent RE43,990 (IPR2014-00714)*

On April 30, 2014, the Department of Homeland Security ("DHS") petitioned for *inter partes* review of three independent claims (11, 74, 81) of U.S. Pat. RE43,990. Appx2341–2347. On October 8, 2014, the proceeding was instituted as IPR2014-00714. Appx2400–2430. In these proceedings, Mr. Golden was apparently briefly represented by counsel until January 6, 2015. Appx2431–2433. In addition to repeatedly recommending that

Mr. Golden retain counsel for the IPR, the record reflects that PTAB went to great lengths to accommodate Mr. Golden's status as a *pro se* patent owner.

On January 7, 2015, Mr. Golden (at this point, proceeding *pro se*) attempted to file a Patent Owner Response and Motion to Amend. *See* 35 U.S.C. § 316(d)(1); Appx2434–2435. Soon thereafter, on January 9, PTAB initiated a conference call to provide Mr. Golden with guidance on how to file such papers in a compliant manner. Appx2434–2438. On this call, PTAB notified Mr. Golden that it was "unclear whether [his] Motion to Amend was contingent on [PTAB] finding the claims at issue unpatentable over the challenges brought by Petitioner." Appx2435. PTAB further carefully explained to Mr. Golden the significant difference in IPR proceedings between contingent and non-contingent motions to amend, explaining that:

> [F]or a contingent motion to amend, we would look at the motion only if the claims at issue are found to be unpatentable over the challenges brought by a petitioner. We explained further that a non-contingent motion to amend would be addressed regardless of whether the claims at issue were found to be unpatentable. In that regard, we note that Petitioner has the burden of demonstrating that the claims at issue

are unpatentable by a preponderance of the evidence. <u>If the Motion to Amend is non-contingent, Mr. Golden is, in essence, abandoning the claims at issue</u>, and saying that we should only look at the claims as amended in the Motion to Amend. Mr. Golden, however, has the burden of demonstrating that the amended claims are patentable by a preponderance of the evidence.

Appx2435–2436 (emphasis added). To further assist Mr. Golden in making proper filings, PTAB directed Mr. Golden to cases discussing the requirements for a motion to amend. Appx2436.

Mr. Golden subsequently filed his Patent Owner's Response and two Motions to Amend on January 23, 2015. Appx2439–2490, Appx2491–2495; Appx2496–2510. One of Mr. Golden's Motions to Amend, entitled "Patent Owner's Non-Contingent Motion to Amend Claims," unambiguously affirmed Mr. Golden's understanding that he was abandoning his claims:

> <u>The Patent Owner understands that by abandoning the claims at issue</u>, and saying that the PTAB should only look at the claims as amended in the "Motion to Amend". The Patent Owner also understands the burden of demonstrating the amended claims are patentable by a preponderance of the evidence.

Appx2492 (emphasis added). This Motion proposed new claims 154–156 as substitutes for the originally challenged claims 11, 74 and 81. *Id.*

PTAB convened another teleconference on February 3, 2015, to discuss the Motions to Amend with Mr. Golden. PTAB again stressed the difference between the types of motions to amend, and twice sought Mr. Golden's confirmation:

> Upon inquiry, Mr. Golden stated that the Motion to Amend was non-contingent. We reminded Mr. Golden that, as set forth in our order of January 13, 2015 (Paper 23), with a non-contingent motion to amend, he bears the burden of demonstrating that the claims are patentable, and that <u>he is abandoning the claims on which trial was instituted</u>. Mr. Golden confirmed again that the motion to amend was a non-contingent motion to amend.

Appx2512 (emphasis added). Having yet again clarified Mr. Golden's intentions with his amendments, PTAB accepted Mr. Golden's two Motions to Amend as a single, non-contingent motion to amend. Appx2512.

On October 1, 2015, the PTAB issued its Final Written Decision, which granted Mr. Golden's non-contingent Motion to Amend. Appx2516–2548. In the Final Written Decision, PTAB granted Mr. Golden's non-contingent motion to amend, which resulted in cancellation of the challenged independent claims (11, 74, 81) of the '990 patent. Appx2518, Appx2547.

Therefore, rather than argue for the patentability of the challenged claims, Mr. Golden "request[ed] cancellation" of the claims issued in the '990 Patent in favor assuming the burden to prove that his new substitute claims (154–156) were patentable. Appx2518. As to those substitute claims, PTAB found that they were not patentable over the prior art. Appx2518, Appx2527–2547 (denying entry of substitute claims 154–156). Accordingly, Mr. Golden's substitute claims were denied entry.

Mr. Golden sought rehearing of PTAB's decision to deny his motion to amend the '990 Patent to add substitute claims 154–156. Appx2549. After PTAB denied his request for rehearing on November 17, 2015 (Appx2558–2566), Mr. Golden did not appeal to this Court.

On July 24, 2018, pursuant to 35 U.S.C. § 318(b), the *Inter Partes* Review Certificate issued evidencing cancellation of claims 11, 74, and 81 as found in PTAB's final written decision. Appx2598–2599. As such, claims 11, 74, and 81 remain cancelled.

However, on July 2, 2019, an attorney representing Mr. Golden filed a petition with the PTO seeking to strike the

Certificate as an *ultra vires* act, relying on the Supreme Court's decision in *Return Mail v. U.S. Postal Service.* Appx2600–2601. This petition remains pending.

By request of Mr. Golden, the lead case is now stayed pending resolution of Mr. Golden's petition to the PTO. Appx2339–2340.

### 3) Mr. Golden's New Duplicative and Derivative Complaint, CFC No. 19-104

Shortly after the Court of Federal Claims lifted the stay on Mr. Golden's takings claims in his lead case, and this Court's denial of Mr. Golden's writ of mandamus (Appeal No. 19-100), Mr. Golden filed a new case in the Court of Federal Claims, docketed as Case No. 19-104 (herein, the "new case"). Appx1007–1059.

In the new case, the complaint (Appx1007–1059, the "new complaint") alleges numerous takings of the subject matter of his patents based on a diverse set of actions by several governmental entities in different branches of the United States' government, including PTAB, DOJ, DHS, the Court of Federal Claims and the Federal Circuit. Below is an outline of the Government's understanding of the myriad allegations in the new complaint:

### (a) Paragraphs 42–45: General Allegation of Takings Based On Government Infringement

In Paragraphs 42–45, Mr. Golden alleges that the property taken is the property right in his patents: the "subject matter as outlined in the Mr. Golden's patent(s) specifications and patent claims that are significantly the same or equivalent to the claimed inventions of the Plaintiff." *See* Appx1027 (new complaint) at ¶43 (emphasis added); *see also* Appx1026–1027 at ¶42 (listing Mr. Golden's ten (10) asserted patents). According to the new complaint, the Government's use "result[ed] in the Government's manufacture and development of products, devices, methods, and systems that are significantly the same or equivalent to the claimed inventions of the Plaintiff." Appx1027 at ¶43. The new complaint also alleges that, "by virtue of the access, disclosure, manufacture, development or use, by or for the Government and its third party awardees," Mr. Golden's competitive edge has been "destroyed." Appx1027.

These allegations, which are central to the new complaint, are indistinguishable from the takings allegations of the Final Complaint in the lead case. *See* Appx2064–2066 at ¶¶87–88.

> **(b)** **Paragraphs 46–48 and 59–79: Alleged Taking Of Sixty-One (61) Claims Based On Cancellation of Three (3) Claims During *Inter Partes* Review**

In Paragraphs 46–48, the New Complaint alleges that the Court of Federal Claims' partial stay (*i.e.*, of his takings claims) "allowed" the Government to take sixty-one (61) of Mr. Golden's claims across multiple patents.[3] *See* Appx1794. In particular, Mr. Golden alleges that the DOJ, DHS and PTAB took three independent claims (claims 11, 74 and 81) of the '990 Patent. *See* Appx1028 at ¶47. These correspond to the very three claims Mr. Golden abandoned during the *inter partes* review. Mr. Golden also alleges that the three substitute claims unsuccessfully

---

[3] However, in alleging a taking based on "permanent invasion of the Plaintiff's property [that eliminated] all economically beneficial uses of such property" (Appx1027–1028 at ¶¶45, 47), the new complaint does not reconcile these allegations with the fact that this partial stay was lifted on November 9, 2018. *See* Appx2302–04.

introduced during the *inter partes* review of the '990 Patent

(claims 154–156) were also taken.  Appx1034–1035 at ¶58.

Mr. Golden appears to allege that the cancellation of these

three patents resulted in a taking of fifty-eight (58) other claims,

including thirty-eight (38) dependent claims of the '990 Patent

that were not subject to *inter partes* review, nine independent

claims of Mr. Golden's U.S. Patent No. 9,096,189 ("the

'189 Patent") and eleven independent claims of Mr. Golden's U.S.

Patent No. 9,589,439 ("the '439 Patent").  Appx1028–1029 at ¶48.

Both the '189 and '439 Patents were being prosecuted by Mr.

Golden in parallel with the IPR of the '990 Patent, and Mr. Golden

alleges that he pursued claims in these later patents intended to

be "significantly the same" as the claims cancelled during the IPR

of the '990 Patent.  *See* Appx1035–1040 at ¶¶59–79 (referring

variously to "substitute claims").

Apparently based on the same logic, Mr. Golden alleges that

dozens of dependent claims of the '990 patent, despite not having

been challenged during the IPR proceeding, have also been taken

based on their dependency from cancelled claims of the '990 patent

(*see* Appx1036–1040 at ¶¶63, 70, 77), or because they allegedly have "significantly the same" scope as claims in the '189 and '439 Patents (*see* Appx1036–1040 ¶¶64, 71, 78).

### (c) Paragraphs 49–58: Arguments Recycled From Non-Appealed IPR Proceeding

At Paragraphs 49–58, Mr. Golden alleges takings based on purported errors that occurred during the IPR, which were allegedly "allowed" by an unspecified stay of his Section 1498(a) patent infringement allegations. Appx1029–1035. Mr. Golden raised each of these arguments before PTAB. However, as discussed above, the PTAB ruled adverse to Mr. Golden's positions and Mr. Golden declined to appeal any of these issues to this Court.

### (d) Paragraphs 80-91: Arguments Recycled From The Lead Case & Premature Appeal

At Paragraphs 80–91, Mr. Golden recycles his prior arguments regarding a myriad of purported slights in the lead case. Appx1040–1057. For example, Mr. Golden again alleges that the Court "abused its discretion" regarding procedural decisions in the lead case. Appx1040–1051 at ¶¶80–81, 85–86.

Mr. Golden also repeats his dissatisfaction with the Court of Federal Claims' Partial Dismissal Order and subsequent proceedings in this Court, including allegations that assigned judges of the Court of Federal Claims are participating in taking Mr. Golden's property. Appx1040–1055 at ¶¶82–90.

Finally, Mr. Golden's final allegation targets this Court's denial of Mr. Golden's Petition for Writ of Mandamus. Appx1055–1056 at ¶91.

### 4)    *Dismissal of Mr. Golden's New Case*

In lieu of answering, the Government moved to dismiss Mr. Golden's new case under RCFC 12(b)(6) for failure to state a claim for which relief can be granted and/or RCFC 12(b)(1) for lack of jurisdiction. Appx1060–1061. After the matter was fully briefed, the Court of Federal Claims dismissed the new complaint.

First, the Court of Federal Claims found that Mr. Golden's new complaint "repeat[s] the same substantive allegations that the United States has 'taken,' through unauthorized use, the subject matter of his patents." Appx1002. Invoking its discretion to dismiss a complaint that "simply duplicates another pending

related action," the Court of Federal Claims dismissed the complaint to the extent that it alleged the same takings alleged in the lead case.

Second, the Court of Federal Claims dismissed the takings claim for lack of jurisdiction, because "plaintiff cannot label what amounts to a patent infringement claim [as] a 'taking in order to proceed under this court's Tucker Act jurisdiction." Appx1002. Since the enactment of the predecessor to 28 U.S.C. § 1498(a), "patent infringement claims are pursued exclusively under § 1498(a). Appx1002–1003.

Third, the Court of Federal Claims held that the new complaint fails to allege a taking by the actions of the PTAB, the Court of Federal Claims, and this Court. Appx1003. Starting with PTAB, the Court of Federal Claims understood Mr. Golden to argue that "cancellation of his '990 independent claims in the IPR . . . constitutes a taking by the PTAB." *Id.* The Court of Federal Claims did not find it necessary to reach "whether an action by the PTAB could ever constitute a government taking." *Id.* Instead, the Court of Federal Claims found it dispositive that "plainly the

cancellation was the result of Mr. Golden's voluntary amendment of his claims." *Id.* As for the actions of the Court of Federal Claims and this Court, the Court of Federal Claims held that their actions could not result in the taking of patent rights, as they merely "*adjudicate* rights in patents." *Id.* (emphasis in original). The Court of Federal Claims also noted that both courts allowed Mr. Golden's Section 1498 patent infringement claims to proceed in the lead case, a fact that Mr. Golden acknowledged. *Id.*

## SUMMARY OF ARGUMENT

This Court should affirm the Court of Federal Claims' dismissal of Mr. Golden's duplicative and derivative new complaint, which attempts to circumvent the Court of Federal Claims' prior rulings limiting the scope of his lead case by improperly labeling all manner of grievances as an omnibus violation of the Takings Clause. Mr. Golden's new complaint, which spans more than 50 pages, can be roughly organized into three different categories of alleged "takings." First, the new complaint alleges "takings" claims sounding in patent infringement that duplicate those filed in his lead case. Second, the new complaint alleges that the cancellation of claims in a related *inter partes* review triggered a compensable taking. Third, the new complaint attacks various procedural and substantive holdings by the Court of Federal Claims and this Court in the lead case. The dismissal of each of these categories of takings allegations can be affirmed on one or more grounds.

First, regarding Mr. Golden's duplicative "takings" allegations sounding in patent infringement, the Court of Federal

Claims correctly exercised its discretion to dismiss these claims because they duplicate the takings claims in Mr. Golden's lead complaint. In the alternative, these duplicative takings claims should be dismissed for lack of jurisdiction, because the Tucker Act does not provide the Court of Federal Claims with jurisdiction to adjudicate claims of government patent infringement; instead, such claims must be pursued under Section 1498(a).

Second, the dismissal of Mr. Golden's allegations of a taking based on the cancellation of certain patent claims in *inter partes* review may be affirmed for several independent reasons. Starting with jurisdiction, the statutory and regulatory framework of the AIA provides a system of administrative and judicial review that displaces any Tucker Act remedy that may otherwise have been available in the Court of Federal Claims. In the alternative, if jurisdiction has not been displaced by the AIA, Mr. Golden's *inter partes* review-related allegations still fail to state a plausible takings claim. For one, this Court's recent decision in *Celgene Corp. v. Peter*, 931 F.3d 1342 (Fed. Cir. 2019), which held that the retroactive application of *inter partes* review is not a taking,

forecloses Mr. Golden's nearly identical takings theory, alleging a substantial adverse impact on his investment-backed expectations. More specifically, and in the alternative, the cancellation of claims of Mr. Golden's patent in *inter partes* review cannot plausibly allege a compensable taking by the Government because the outcome he complains of followed after he deliberately abandoned the challenged claims instead of arguing for their validity over the prior art.

Third, the dismissal of Mr. Golden's takings allegations targeting various actions of the Court of Federal Claims and this Court can be affirmed on either jurisdictional grounds or for failure to state a cognizable takings claim.

Relating to all of Mr. Golden's takings allegations, dismissal of Mr. Golden's takings allegations is further compelled by a multitude of contradictions and vagueries internal to Mr. Golden's complaint and informal brief. Dismissal is made even more appropriate in view of contemporaneous, contradictory representations made by Mr. Golden outside of this appeal before the USPTO and in district court.

## STANDARDS OF REVIEW

This Court "review[s] de novo the Court of Federal Claims'
dismissals based on lack of jurisdiction and failure to state a claim
for which relief can be granted." *Two Shields v. United States*,
820 F.3d 1324, 1328–29 (Fed. Cir. 2016) (citation omitted). "[T]he
plaintiff bears the burden of establishing the court's jurisdiction
by a preponderance of the evidence." *Brandt v. United States*, 710
F.3d 1369, 1373 (Fed. Cir. 2013).

The Court of Federal Claims' dismissal of a duplicative claim
is reviewed for abuse of discretion. *See Finch v. Hughes Aircraft
Co.*, 926 F.2d 1574, 1577 (Fed. Cir. 1991) (affirming dismissal of
duplicate complaint because plaintiff had "not demonstrated that
the district judge erred, much less abused his discretion").

# ARGUMENT

## I. MR. GOLDEN'S DUPLICATIVE PATENT INFRINGEMENT "TAKINGS" CLAIMS WERE PROPERLY DISMISSED.

### A. The Court of Federal Claims Did Not Abuse Its Discretion In Dismissing Mr. Golden's Duplicative Takings Claim

The Court of Federal Claims did not abuse its discretion in dismissing Mr. Golden's duplicative patent infringement "takings" claim.

#### 1) *Mr. Golden Has Never Disputed That His "Takings" Claims Are Duplicative.*

Before the Court of Federal Claims, Mr. Golden never sought to differentiate the patent infringement "takings" allegations in his new case from his lead case. And even on appeal, Mr. Golden does not dispute the Court of Federal Claims' finding that the allegations are duplicative. On this basis alone, the Court of Federal Claims' dismissal should be affirmed.

#### 2) *The Patent Infringement "Takings" Claims In The New Case Duplicate Those In The Lead Case.*

A comparison of the complaints in the new and lead cases confirm that the Court of Federal Claims was correct in finding

the "takings" allegations to duplicate the allegations in the lead complaint.

For example, both complaints identify the "subject matter as outlined in the Plaintiff's patent(s) specifications and patent claims" that are "significantly the same or equivalent to the claimed inventions of the Plaintiff" as being the allegedly taken property.  *Compare* Appx1027 (new complaint) at ¶43 *with* Appx2043 (lead complaint) at ¶10 and Appx2064–2066 (lead complaint) at ¶87.

In another example, both complaints identify the same patents or patentable subject matter as being infringed or taken. *Compare* Appx1026–1027 (new complaint) at ¶42 (identifying U.S. Pat. Nos. 7,385,497; 7,636,033; 8,106,752; 8,334,761; 8,531,280; RE43,891; RE43,990 (the '990 Patent); 9,096,189; 9,589,439 (the '439 Patent); and 10,163,287 (the '287 Patent)) *with* Appx2052 (lead complaint) at ¶36, Appx2064–2066 (lead complaint) at ¶87 (identifying U.S. Pat. Nos. 7,385,497; 7,636,033; 8,106,752; 8,334,761; 8,531,280; RE43,891; RE43,990; 9,096,189; 9,589,439 (the '439 Patent)), and Appx2067–2068 (lead complaint) at ¶91

(relating to infringement, also identifying App. Ser. No. 15/530,839, which later issued as the '287 Patent).

Furthermore, both complaints identify the same government action as triggering the alleged taking. *Compare* App1027 (new complaint) at ¶43 ("resulting in the Government's manufacture and development of products, devices, methods, and systems that are significantly the same or equivalent to the claimed inventions of the Plaintiff") *with* Appx2064–2066 (lead complaint) at ¶87 (same); *compare* App1027 (new complaint) ¶44 (alleging injury "by virtue of the <u>access, disclosure, manufacture, development or use</u>, by or for the Government and its third party awardees") *with* Appx2064–2066 (lead complaint) ¶87 (same).

Faced with the virtual identity of the takings allegations between the new and lead complaints, the Court of Federal Claims did not abuse its discretion in dismissing Mr. Golden's duplicative takings allegations in the new complaint.

## B. Even If Labeled As A "Taking," The Tucker Act Does Not Provide Jurisdiction Over Patent Infringement Allegations.

Even if Mr. Golden's patent infringement "takings" claims are not duplicative of those in his lead case, the Court of Federal Claims correctly concluded that it lacks jurisdiction under RCFC 12(b)(1) to consider such claims of government patent infringement under the Tucker Act.

As discussed above, Section 1498, which was enacted in the wake of *Schillinger*, represents a calibrated statutory extension of this Court's subject matter jurisdiction beyond that permitted by the Tucker Act. By the same token, because Section 1498 was intended to add to this Court's jurisdiction, it does not modify the Court's existing Tucker Act jurisdiction, which *Schillinger* holds does not permit suits for patent infringement.

Therefore, patent infringement allegations simply cannot be brought under the Tucker Act. Mr. Golden's brief never attempts to overcome this long-established precedent or distance his allegations from those at issue in *Schillinger*, which remains controlling law. *See* PBr. at 8–13, 21.

And just as in *Schillinger*, Mr. Golden alleges that the
Government used a patented invention without authorization, and
labels this claim as a violation of the Takings Clause. *See
Schillinger*, 155 U.S. at 168. While labelled as a "taking," Mr.
Golden's sole count actually alleges patent infringement under
Section 1498(a). *Compare* Appx1027 (new complaint) at ¶43
("[T]he 'Government' has taken and used for the benefit of the
public, the private and personal property <u>subject matter as
outlined in the Plaintiff's patent(s) specifications and patent
claims</u> that are significantly the same or equivalent to the <u>claimed
inventions of the Plaintiff</u>; resulting in <u>the Government's
manufacture and development</u> of products, devices, methods, and
systems that are significantly the same or equivalent to the
<u>claimed inventions of the Plaintiff</u>.") (emphasis added), Appx1026–
1027 at ¶42 (listing Mr. Golden's ten (10) asserted patents), and
Appx1027 at ¶44 (alleging economic impact "by virtue of the
<u>access, disclosure, manufacture, development or use</u>, by or for the
Government and its third party awardees") *with* 28 U.S.C.
§ 1498(a) ("Whenever an invention described in and covered by a

patent . . . is used or manufactured by or for the United States without license").

As discussed previously, claims against the Government for patent infringement cannot be brought under the Tucker Act. *See Schillinger*, 155 U.S. at 169 (affirming dismissal of a claim "plainly and solely an action for an infringement"); *see also Crozier*, 224 U.S. at 304 (finding that the predecessor of § 1498 "add[ed] to the right to sue the United States in the Court of Claims"); *Zoltek*, 442 F.3d at 1350–53 (finding that the Supreme Court "acknowledged Congressional recognition that the Court of Claims lacked Tucker Act jurisdiction over infringement under a takings theory").

By re-labeling his patent infringement allegations as takings and dropping references to Section 1498(a), Mr. Golden's new complaint attempts to circumvent the Court of Federal Claims' dismissals of most of his patent infringement claims in the lead case (*see* Appx 2262–2306) by re-introducing the same allegations solely as takings under the Tucker Act. However, when evaluating whether jurisdiction is met, a court is not required to

credit conclusory or frivolous statements (as the Court of Federal Claims observed), or exercise its jurisdiction if the alleged claim under the Constitution or federal statute clearly appears immaterial and made solely for the purpose of obtaining jurisdiction. *See Bell*, 327 U.S. at 682–83.

Disregarding Mr. Golden's ineffectual labels, it becomes clear that his "takings" allegations sound in patent infringement, which must be brought under Section 1498, not the Tucker Act. Mr. Golden's brief admits that there is no material difference between his takings claims and government infringement under Section 1498(a): "The intellectual property subject matter used by the Government for the benefit of the public must be 'substantially the same' as Plaintiff-Appellant's intellectual property subject matter in the form of a patent(s)." PBr. at 6.

Therefore, Mr. Golden's duplicative "takings" allegations were properly dismissed for lack of jurisdiction.

## II. MR. GOLDEN'S TAKINGS CLAIM BASED ON THE CANCELLATION OF HIS CLAIMS IN *INTER PARTES* REVIEW WAS PROPERLY DISMISSED

### A. The Tucker Act Does Not Provide Jurisdiction Over A Takings Claim Directed At Cancellation of Patent Claims In *Inter Partes* Review

Although Mr. Golden's takings allegations relating to *inter partes* review of his patent clearly fail to state a claim, as the Court of Federal Claims found, upon further consideration, the Government identifies a further jurisdictional problem that was not recognized before the Court of Federal Claims: The Tucker Act does not provide the Court of Federal Claims with jurisdiction over a takings claim directed at cancellation of patent claims in *inter partes* review.

Because "limitations on subject-matter jurisdiction are not waivable," *St. Bernard Parish Gov't*, 916 F.3d at 992, we bring the jurisdictional problem to this Court's attention at this time. The Government raised this same jurisdictional argument in another currently-pending appeal from the Court of Federal Claims, *Christy v. United States*, Appeal No. 19-1738.

The AIA's creation of *inter partes* review by the PTAB, followed by judicial review of the PTAB's decision in this Court, creates a paradigmatic "self-executing remedial scheme" that "supersedes the gap-filling role of the Tucker Act." *United States v. Bormes*, 568 U.S. 6, 13 (2012).  Accordingly, the Court of Federal Claims lacked jurisdiction to entertain Mr. Golden's claim that the cancellation of his patent claims in *inter partes* review violated the Takings Clause.

"To determine whether a statutory scheme displaces Tucker Act jurisdiction, a court must 'examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes.'" *Horne*, 569 U.S. at 527 (alterations in original) (quoting *United States v. Fausto*, 484 U.S. 439, 444 (1988)). Recently, this Court analyzes:

> (1)    Whether there is available "relief at the agency level," including whether there was any "procedural impediment" to presentation of a takings claim to the agency and whether presenting the takings claim would have been "futile." *Alpine PCS, Inc. v. United*

States*, 878 F.3d 1086, 1097 (Fed. Cir. 2018); *see Horne*,

569 U.S. at 527; and

(2)     Whether the remedial scheme "provides for judicial

review of constitutional challenges" to the agency's

action, as well as whether the reviewing court "was

capable of ordering any appropriate relief, whether on

appeal or on remand to the agency."  *Alpine*, 878 F.3d

at 1098; *see Horne*, 569 U.S. at 527.

If so, then the statute affords a plaintiff "'a ready avenue' to bring

its takings claim and displaces Tucker Act jurisdiction over that

claim." *Alpine*, 878 F.3d at 1098 (quoting *Horne*, 569 U.S. at 527–

28).

As discussed below, the *inter partes* review provisions of the

AIA, like the provisions of the Communications Act found to

displace Tucker Act jurisdiction in *Alpine*, provide such a ready

avenue for patent owners like Mr. Golden to bring their takings

claim.

**1)** **There Is No "Procedural Impediment" to a Patent Owner Raising Objections Based On the Takings Clause During Inter Partes Review.**

As this Court is familiar, during *inter partes* review proceedings, patent owners are entitled to present written memoranda and oral argument. *See*, *e.g.*, 35 U.S.C. § 316(a)(8), 35 U.S.C. § 316(a)(10). Those memoranda and arguments can include (and have included) constitutional objections, including objections based on the Takings Clause. 35 U.S.C. § 316(a)(8), (10); *see*, *e.g.*, *Huawei Device Co. v. Optis Wireless Tech., LLC*, No. IPR 2018-00585, 2019 WL 4439874, at *16 (P.T.A.B. Sept. 16, 2019) ("According to Patent Owner, '[s]ubjecting the '851 Patent to [*inter partes* review] retroactively is a violation of the Fifth Amendment and constitutes an unconstitutional regulatory taking.'" (alteration in original)).

Presenting constitutional arguments to the PTAB is not "futile." Just like the FCC in *Alpine*, the PTAB "is generally under an obligation not to take action contrary to the Constitution." 878 F.3d at 1097; *see* 5 U.S.C. § 706(2)(A), (B). If the PTAB determined that cancelling a patent through *inter*

*partes* review would affect an unconstitutional taking, it could

provide adequate relief by declining to institute *inter partes*

review, thereby "eliminating the taking." *Alpine*, 878 F.3d at

1096.[4]

### 2) The Judicial Review Scheme Squarely Covers Mr. Golden's Grievance.

"In any event, the judicial review scheme" under the AIA,

like the judicial review scheme under the Communications Act in

Alpine, "squarely covers [Mr. Golden's] grievance." *Alpine*, 878

F.3d at 1097–98; *see Tex. Peanut Farmers v. United States*, 409

F.3d 1370, 1374 (Fed. Cir. 2005) (finding Tucker Act jurisdiction

displaced because "Congress granted district courts exclusive

jurisdiction over claims," without considering whether relief was

available at the agency level).

---

[4]  In *Celgene*, the Court expressed uncertainty about "how the Board could have corrected the alleged constitutional defect" involved in the patent owner's Takings Clause claim. 931 F.3d at 1357. However, the Court acknowledged the government's suggestion that the PTAB could exercise its discretion to decline to institute the inter partes review. *Id.* at 1357 n.11. The Court noted that its ability to review such a decision might be limited, *see id.*, but it does not appear to have rejected the Board's authority to make the decision.

In an *inter partes* review, a party "who is dissatisfied with the final written decision of the Patent Trial and Appeal Board . . . may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit." 35 U.S.C. § 141(c). In such appeals, this Court is "capable of ordering any appropriate relief," including the reversal of the *inter partes* review decision. *Alpine*, 878 F.3d at 1098; *see, e.g., A*TI *Techs. ULC v. Iancu,* 920 F.3d 1362 (Fed. Cir. 2019). Patent owners may seek relief on any relevant grounds, including constitutional grounds. *See, e.g., A*rthrex, Inc. *v. Smith & Nephew, Inc., 935* F.3d 1319, 1326 (Fed. Cir. 2019); *Celgene*, 931 F.3d at 1349. The Court even has the discretion to consider and decide constitutional claims that the patent owner failed to present to the Board. *See Celgene*, 931 F.3d at 1356–57.

Because the AIA, like the Communications Act in *Alpine*, afforded Mr. Golden a "'ready avenue' to bring [his] taking claim," it "displaces Tucker Act jurisdiction over that claim." *Alpine*, 878 F.3d at 1098 (quoting *Horne*, 569 U.S. at 527–28).

Indeed, the availability of relief through this avenue is not merely hypothetical. In recent years, numerous patent owners

have appealed PTAB decisions to this Court on the grounds, *inter alia*, that the cancellation of their patents in *inter partes* review violated the Takings Clause and other constitutional provisions. *See Celgene*, 931 F.3d at 1356 (noting the "growing number of retroactivity challenges"); *see also*, *e.g.*, *Arthrex*, 935 F.3d at 1331 (Fed. Cir. 2019); *Enzo Life Scis., Inc. v. Becton, Dickinson & Co.*, No. 2018-1232, 2019 WL 3851578, at *7 (Fed. Cir. Aug. 16, 2019); *Collabo Innovations, Inc. v. Sony Corp.*, No. 2018-1311, 2019 WL 3545450, at *4 (Fed. Cir. Aug. 5, 2019). Where those claims have been properly presented, this Court has squarely addressed them, rejecting them on their merits.

Mr. Golden had the same avenue for relief was available to him, but he simply did not avail himself of that remedy. Accordingly, the AIA "withdraws Tucker Act jurisdiction" over Mr. Golden's takings claim. *See Horne*, 569 U.S. at 527–28.

### 3) *The AIA's Administrative and Judicial Review Would Still Be Adequate to Withdraw Tucker Act Jurisdiction.*

Even if the PTAB did not itself have authority to provide redress on the basis of a meritorious Takings Clause claim, the

AIA's combination of administrative and judicial review would still be adequate to withdraw Tucker Act jurisdiction. Both the Supreme Court and this Court have found that administrative and judicial review schemes can displace Tucker Act jurisdiction without concluding that the administrative agency had power to adjudicate constitutional claims.

For example, in *Horne*, the Supreme Court found Tucker Act jurisdiction withdrawn even though the agency's judicial officer 'believed that he lacked 'authority to judge the constitutionality of the various statutes administered by the [USDA],' and declined to adjudicate petitioners' takings claim." 569 U.S. at 521 (citation omitted; alteration in original); *see Bormes*, 568 U.S. at 15.

This Court has also found Tucker Act jurisdiction withdrawn in several instances without determining whether the agencies in question had authority to remediate constitutional violations. *See, e.g.*, *Texas Peanut Farmers*, 409 F.3d at 1374; *Vereda, Ltda. v. United States*, 271 F.3d 1367 (Fed. Cir. 2001); *St. Vincent's*, 32 F.3d at 550. Indeed, this Court has held that Tucker Act jurisdiction may be displaced by statutes that authorize review in

the district court without any agency review at all. *Marcum LLP v. United States*, 753 F.3d 1380, 1383 (Fed. Cir. 2014); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993).

Thus, while the PTAB's ability to decline to take unconstitutional action supports Tucker Act displacement, patent owners' ability to obtain judicial review of their constitutional claims in this Court on appeal from PTAB final written decisions is "[i]n any event" sufficient. *Alpine*, 878 F.3d at 1096.

Nor is it material to the jurisdictional analysis that Mr. Golden could not have received monetary compensation had it appealed the PTAB's decision. The same was true in *Horne*, where the judicial review scheme found to preempt Tucker Act jurisdiction provided only for the challenge of "the content, applicability, and enforcement of marketing orders" limiting the sale of produce. *Horne*, 569 U.S. at 527. And this Court reached the same conclusion in *Vereda*, which holds that "a comprehensive administrative and judicial system to review the *in rem* administrative forfeiture of property seized pursuant to" a federal statute displaced the Court of Federal Claims' Tucker Act

jurisdiction.  271 F.3d at 1375.  At most, the judicial proceedings at issue in *Vereda* would have "invalidate[d] the forfeiture," which is precisely the same situation as here, where the AIA empowers this Court to invalidate a patent cancellation.  *Id.* at 1372.

**B.    Mr. Golden's Takings Allegations Relating to Cancellation of Claims In *Inter Partes* Review Are Entirely Foreclosed By This Court's Decision in *Celgene.***

If the Court of Federal Claims had jurisdiction under the Tucker Act to adjudicate Mr. Golden's takings allegations stemming from the cancellation of claims in *inter partes* review, these allegations still fail to state a claim because they are foreclosed by this Court's recent decision in *Celgene Corp. v. Peter,* 931 F.3d 1342 (Fed. Cir. 2019), which issued after the Court of Federal Claims dismissed the new complaint.

In *Celgene*, this Court held that "the retroactive application of [inter partes review] proceedings to pre-AIA patents is not an unconstitutional taking under the Fifth Amendment."  *Celgene*, 931 F.3d at 1362.  Thus, cancellation of three independent claims in the '990 Patent in *inter partes* review does not violate the Takings Clause.

Mr. Golden's opening briefs do not address the *Celgene* decision.[5] Although Mr. Golden does not specifically identify the <u>retroactive</u> application of *inter partes* review as effecting a taking, Mr. Golden's new complaint and brief echo the unsuccessful arguments in *Celgene*, especially his allegations that cancellation of his claims has had a "substantial adverse impact . . . on '[his] reasonable investment-backed expectations." Appx1036–1040 (new complaint) at ¶¶65, 72, 79; PBr. at 8 (arguing that "the 'takings' is preventing success or development of Plaintiff-Appellant's CMDC device in accordance with the 'reasonable investment-backed expectations' of" Mr. Golden). *Celgene* rejected this argument, noting that *inter partes* review does not disrupt patent holders' decades-long expectation that "patents are open to PTO reconsideration and possible cancelation if it is determined . . . that the patents should not have issued in the first place." *Celgene*, 931 F.3d at 1361–62.

---

[5] Mr. Golden's first attempted brief was mailed on August 5, 2019. *See* Dkt. 08. The operative opening (informal) brief in this appeal was dated September 2, 2019. Dkt. 16.

Accordingly, in view of *Celgene*, Mr. Golden's takings allegations relating to the cancellation of his claims in *inter partes* review fail to state a claim for which relief can be granted.

## C. Mr. Golden's Deliberate Abandonment of Claims In *Inter Partes* Review Cannot Constitute a Fifth Amendment Taking.

Finally, Mr. Golden's deliberate abandonment of three claims challenged in the IPR proceeding (*i.e.*, claims 11, 74 and 81 of the '990 Patent) cannot plausibly constitute a Fifth Amendment taking by the Government. Mr. Golden had a full and fair opportunity in the IPR proceeding to argue that the challenged claims were valid without amendment. He declined to do so. Instead, Mr. Golden decided to introduce entirely new claims, and despite PTAB's multiple inquiries, reiterated his informed decision to abandon the challenged claims. Mr. Golden also declined to appeal any aspect of PTAB's final written decision to this Court.

In the instant appeal, Mr. Golden does not dispute that he simply abandoned the challenged claims. Instead, Mr. Golden reiterates his argument that the *inter partes* review was a

"frivolous litigation" based on "unqualified prior art," (PBr. at 26),
an argument that negates the concession of legitimacy required to
maintain a cause of action for a taking.

Accordingly, because the cancellation of claims 11, 74 and 81
of the '990 Patent were the result of Mr. Golden's own deliberate
abandonment, the cancelled claims of the '990 Patent do not give
rise to a compensable taking.

Mr. Golden's allegations of the taking of <u>un</u>challenged claims
are even more fanciful. Starting with the dependent claims of the
'990 Patent, these were not even the subject of the *inter partes*
review proceedings. As such, they were not cancelled during the
*inter partes* review, were not addressed on the *Inter Partes* Review
Certificate, and thus, cannot have been taken.

Turning to the '439 Patent and the '189 Patents, neither
patents were involved in the *inter partes* review of the '990 Patent,
let alone any claim therein cancelled by that *inter partes* review
proceeding.[6] Finally, Mr. Golden has no more of a property right

---

[6] As best as can be understood, Mr. Golden's purposeful pursuit
of claims in <u>other</u> patents with claim scope redundant to the
claims he abandoned in the '990 Patent has apparently resulted in

to substitute claims introduced and rejected in an *inter partes* review than to claims rejected in the original *ex parte* examination process. In either case, Mr. Golden must demonstrate that the claims are patentable before the PTO will allow such claims to issue in a new patent or be confirmed in one. Moreover, because Mr. Golden declined to appeal PTAB's finding of unpatentability of substitute claims, or any other matter that occurred during the *inter partes* review proceeding, the events and results of the *inter partes* review of the '990 Patent cannot give rise to a compensable taking.

In an attempt to restore his takings claims by this appeal, Mr. Golden <u>must</u> concede that the Government has the authority to take his patented subject matter. PBr. at 3, 25; *see Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (noting that the Tucker Act does not create jurisdiction when the party contests the propriety of a taking). Yet Mr. Golden now

---

a "cascade" of likely invalidity, where the cancellation of only three claims of one patent has jeopardized the validity of almost sixty other asserted claims across multiple patents. Again, this is a problem of Mr. Golden's own making.

incongruously alleges a taking based on violation of a statute of regulation, and suggesting that the *inter partes* review proceeding was "frivolous litigation" in which the Government "fail[ed] to adhere to the proper statues and accepted standard of proceedings").

Likewise, Mr. Golden's untethered reference (PBr. at 27) to dicta from *Return Mail, Inc. v. U.S. Postal Serv.*, 139 S. Ct. 1853, 1867 (2019) does nothing to undo his deliberate choice to abandon his patent claims rather than to argue for their validity over prior art.  Moreover, unlike the patent owner in *Return Mail*, although Mr. Golden had every opportunity to contest the legitimacy of the *inter partes* review proceeding, he declined to do so, including by an appeal from that proceeding.  At least when seeking relief from this Court to restore his takings allegations, Mr. Golden cannot rely on *Return Mail* to dispute the legitimacy of the *inter partes* review of the '990 Patent.[7]  Accordingly, *Return Mail* and

---

[7]  *See* Section IV below regarding a current, contradictory position taken by Mr. Golden before the USPTO regarding the '990 Patent.

allegations of legal or regulatory violations undercut Mr. Golden's appeal.

Therefore, based on Mr. Golden's own deliberate abandonment of his patent claims, which was cemented by his failure to appeal any aspect of the *inter partes* review proceeding to this Court, the new complaint fails to state a claim for which relief can be granted.

## III. DECISIONS BY THE COURT OF FEDERAL CLAIMS AND THIS COURT ARE NOT FIFTH AMENDMENT TAKINGS

### A. The Tucker Act's Takings Jurisdiction Does Not Include Allegations Amounting to Disagreement With Court Decisions

As the Court of Federal Claims noted, it and this Court only "*adjudicate* rights in patents." Appx1003. The Tucker Act does not provide jurisdiction for the Court of Federal Claims to "entertain a taking claim that requires the court to 'scrutinize the actions of' another tribunal," let alone itself. *See Vereda, Ltda.*, 271 F.3d at 1375 (quoting *Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed.Cir.2001)).

Additionally, many of Mr. Golden's allegations directed at the Court of Federal Claims and this Court appear to allege a violation of the due process clause of the Fifth Amendment, over which the Court of Federal Claims lacks jurisdiction. *See Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir. 1995) (holding that the Fifth Amendment's "due process clause does not obligate the government to pay money damages").

Therefore, the Tucker Act does not provide jurisdiction to adjudicate Mr. Golden's disagreement with various court decisions as takings.

## B. The New Complaint Fails To State A Plausible Claim Of A Taking Based On Court Decisions.

As the Court of Federal Claims recognized, Mr. Golden's allegations of a taking by judicial actions fails to state a plausible claim of relief. As noted above and recognized by the Court of Federal Claims, courts only adjudicate patent rights. Additionally, both the Court of Federal Claims and this Court have permitted Mr. Golden's patent infringement claims to proceed in his lead case under Section 1498(a).

In a similar vein, the lead case has not arrived at a final decision, so Mr. Golden's takings allegations on the basis of events in that case are premature. *See Williamson Cty. Re'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 n.13 (1985) ("As we have explained, however, because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied.").

On appeal, Mr. Golden appears to have abandoned his takings allegations relating to the Court of Federal Claims' prior stay, which has been lifted. At any rate, Mr. Golden does not address why delay compensation would not compensate him for lost use of any takings award between the date of the taking and the date of the payment. *See Hardy v. United States*, 138 Fed. Cl. 344, 349 (2018). Additionally, Mr. Golden does not show that the prior stay constituted the "extraordinary delay" required to prevail on a temporary takings claim. *Cane Tenn., Inc. v. United States*, 57 Fed. Cl. 115, 131–32 (2003).

Moreover, in this case, the Court of Federal Claims found that Mr. Golden's takings allegations are adequately covered (and

indeed, duplicated) by Mr. Golden's Section 1498(a) allegations of patent infringement, undermining the potential that any property right has actually been impaired. Appx1003.

Therefore, Mr. Golden's takings allegations attacking the decisions of the Court of Federal Claims and its reviewing tribunal are entirely without merit.

## IV. RECENT LEGAL FILINGS BY MR. GOLDEN MATERIALLY UNDERMINE HIS TAKINGS ARGUMENTS TO THIS COURT.

Recent legal filings by Mr. Golden outside of, but during the pendency of, this appeal materially undermine Mr. Golden's arguments on appeal.

For example, on one hand, Mr. Golden concedes in this appeal that the Government "has the authority to take [his] intellectual property subject matter." PBr. at 3, 25. On the other hand, Mr. Golden (through an attorney) is currently petitioning the PTO to expunge the *Inter Partes* Review Certificate from the '990 Patent because the cancellation of those claims was allegedly an *ultra vires* act. Appx2600–2601 (arguing that "[t]he USPTO lacked statutory authorization to generate this document" and

"[t]he existence of the Certificate is *ultra vires* agency authority")].
Mr. Golden's "concession" to facially plead a violation of the
Takings Clause based on cancellation of claims in the '990 Patent
cannot be squared with Mr. Golden's concurrent petition
challenging the USPTO.

In another example, on one hand, Mr. Golden alleges and
represents to this Court that the Government's actions have
"eliminated all economically beneficial uses" of at least the '990
Patent. Appx1027–1029 (new complaint) at ¶¶45, 47, 48; PBr. at
8. On the other hand, as of September 11, 2019, Mr. Golden
initiated a patent infringement suit in the District of South
Carolina asserting several patents, including the '990 Patent that
he claims has been entirely taken, against over a dozen private
sector defendants, including Apple, Samsung, Qualcomm, and
AT&T. Appx2606 (Complaint for Patent Infringement, *Golden v.
Apple et al.*, No. 19-cv-2557 (D.S.C. Sep. 11, 2019), Appx2710–
2743 (alleging infringement of the '990 Patent); Appx2763
(Amended Complaint for Patent Infringement), Appx2957–2996
(alleging infringement of the '990 Patent). Mr. Golden's claims of

economic elimination cannot be squared with his concurrent assertion of the allegedly "taken" patents against private defendants in district court.

## V.    RESERVATION OF RIGHTS & APPENDIX ISSUES

Given the confusion caused by the multiple and voluminous entries on the docket in this appeal and in the second premature appeal of the lead case (Appeal No. 19-2135), and Mr. Golden's filing of identical, omnibus-style briefs in both appeals, the Government reserves the right to later address issues from the lead case that are not presently on appeal.  These include:

- New Implied Contract Allegations (*compare* PBr. 5, 14, 18–19, 21–24 *with* Appx2336, Appx2338 (finding Mr. Golden's allegations of breach of implied-in-fact contracts to be new to the lead case and denying entry and consideration thereof)

- Disagreement with the November 28, 2018 Order dismissing various claims of infringement of dependent claims without alleging infringement of underlying

independent claims (*compare* PBr. at 27 with Appx2307

(dismissing various dependent claims)

Additionally, the Government objects to Mr. Golden's inclusion in his informal Appendix of a paper and video that were expressly rejected by this Court's Clerk as being non-compliant. In particular, Mr. Golden included a previously filed brief in this appeal, which was deemed non-compliant.  *Compare* Appx10–69 (described by Mr. Golden as "Memorandum of Law: Case No. 19-2134, Dkt. No. 9; filed on August 5, 2019) *with* Dkt. 9 at 1–61; Dkt. 11 (Notice of Non-Compliance rejecting the "formal brief" filed at Dkt. 9).  This memorandum is more than twice as long as Mr. Golden's opening informal brief.  Mr. Golden also attempted to re-introduce a "documentary video" he apparently produced for this appeal, which is not in conformance with Fed. Cir. R. 30(j). Appx164–165; see Dkt. 11 (Notice of Non-Compliance rejecting the video).

To avoid even more confusion on the docket as to the issues and record on this appeal, the Government requests that these sections of the Appendix be struck from the record on appeal.

Based on these issues and inadequacies in Mr. Golden's informal appendix, pursuant to Fed. Cir. R. 30(f), the Government submits a separate appendix that shares the prefix ("Appx") of Mr. Golden's informal appendix, with numbering beginning at Appx1000 to more readily identify and distinguish documents provided in the Government's appendix.

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims should be affirmed.

Respectfully submitted,

JOSEPH H. HUNT
*Assistant Attorney General*

GARY L. HAUSKEN
*Director*

*/s/ Nicholas J. Kim*
NICHOLAS J. KIM
*Trial Attorney*
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
*nicholas.j.kim@usdoj.gov*
T: (202) 616-8116
October 28, 2019          F: (202) 307-0345

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. Service on Plaintiff Mr. Golden in this case will be accomplished via e-mail, with a courtesy copy being deposited via Federal Express.

*/s/ Nicholas J. Kim*
NICHOLAS J. KIM

**CERTIFICATE OF COMPLIANCE**

I hereby certify this brief complies with the requirements of Federal Circuit Rule 32(a). This brief contains 10,717 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Federal Circuit Rule 32(b).  This brief has been prepared using Microsoft Word 2016 in size 14-point Century Schoolbook font, a proportionally spaced typeface.

*/s/ Nicholas J. Kim*
NICHOLAS J. KIM